In re WESTERN FARMERS ASSOCIA-
TION, a Washington agricultural
cooperative et al., Debtor.

WESTERN FARMERS ASSOCIATION, a
Washington agricultural
cooperative, Plaintiff,

v.

CIBA GEIGY et al., Defendants.

Adversary Proceeding Nos.
80–0092, 80–106.

United States Bankruptcy Court,
W. D. Washington, at Seattle.

July 30, 1980.

On Motion for Reconsideration
Oct 8, 1980.

Michael G. Wickstead, Thomas S. Zilly, Seattle, Wash., for Western Farmers Assoc.

George E. Frasier, Seattle, Wash., for Spokane Bank for Cooperatives.

Bruce T. Thurston, Seattle, Wash., for Golby Bag Co. and A. R. Smith & Co.

Jay M. Gamberg, New York City, for Pfizer, Inc.

David L. Friend, Seattle, Wash., for Niderost T & A Dehy, Inc.

Thomas G. Thorbeck, Seattle, Wash., for Davis Walker.

John T. John, Seattle, Wash., for Fisher Mills, Inc.

David Lieberworth, Seattle, Wash., Marianne McGettigan, Asst. Atty. Gen., Dept. of Agriculture, Olympia, Wash., for Shafer–Haggart, Ltd.

## AMENDED OPINION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEMANDS FOR RECLAMATION

SAMUEL J. STEINER, Bankruptcy Judge.

### FACTS AND NATURE OF ACTION

The controversy before the Court concerns but one issue in a very complex reorganization. Specifically, the question involves the relative positions of sellers attempting reclamation from the debtor under Section 546(c) of the Bankruptcy Code and the debtor's lender who claims a security interest in the delivered goods.

The debtor is an agricultural cooperative whose operations have been and are currently financed by loans from the Spokane Bank for Cooperatives. The Bank holds security interests with after–acquired property provisions in all of the debtor's pre–filing assets and (pursuant to Orders previously entered in this case to secure interim financing) in its post–filing assets. On the date of filing, the debt to the Bank exceeded $58,000,000.

The original petition for reorganization was filed on December 10, 1979. Upon learning of the filing, the defendants, all of whom had delivered goods, merchandise and commodities to the debtor on credit a few days prior to filing, demanded reclamation pursuant to Section 2–702 of the State of Washington Uniform Commercial Code (RCW 62A.2–702). This section provides, in pertinent part, as follows:

"(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt . . .

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article (RCW 62.2–403) . . ."

The debtor commenced this action under Section 546(c) of the Bankruptcy Code, contesting the validity of twenty–three of the demands, conceding the validity of twenty–one of the demands, and seeking to give the reclaimants who have valid demands an administrative priority in lieu of reclamation. Eleven of the defendants whose claims were contested defaulted. Nine of the defendants whose reclamation claims were concededly valid defaulted and were given the administrative priority in a total amount of $109,964.84. The debtor has now moved for partial summary judgment denying the valid claims and granting such claimants an administrative priority. In response, the defendants, Pfizer, Inc., A. R. Smith, Inc., Rainier Ellenbaas, Goldby Bag Company, and Shaffer–Haggart, Ltd., filed denials and cross motions for summary judgments which individually and/or collectively seek the denial of the debtor's motion and immediate reclamation or payment or a first lien on the debtor's assets to guarantee payment and interest.

The debtor has until August 30, 1980, to file its plan or reorganization. At this point, the debtor maintains that it will file a plan, but it has not given the Court or the creditors any inkling as to what provisions might be made for the satisfaction of claims.

The facts as to the debtor's handling of the items delivered by the defendants appear to vary. The debtor states that it disposed of some of the items prior to receipt of the pertinent demands for reclamation; that the bulk of the goods delivered consisted of grain, meal, feed and other fungible commodities which were mixed or stored with goods of a similar nature, thus making it impossible to identify the specific goods for which reclamation is sought; and that in any event, in the regular course of its business, it disposed of all goods and commodities which may have been subject to reclamation. In short, the debtor ignored the demands for reclamation.

## DECISION

As to this motion, the requirements of Section 546(c) were satisfied. The defendants had delivered goods to the debtor in the ordinary course of business, they had made written demand for reclamation within ten days of delivery and, for purposes for this proceeding, all the parties conceded the debtor was insolvent at the time of delivery.

The real question is whether the defendants' attempt to reclaim can prevail in the face of the Spokane Bank's asserted security interest in the delivered goods.

Prior to the effective date of the Bankruptcy Code, there was a dispute between the Circuits as to whether or not the rights of a trustee in bankruptcy were superior to those of a creditor seeking reclamation under Section 2–702 of the Uniform Commercial Code. In two cases, the Ninth Circuit

Court of Appeals adopted the position that the rights of the reclaiming creditor were superior, *In re Telemart*, 524 F.2d 761 (9th Cir. 1975) U.S. cert. den. 424 U.S. 969, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976); *In re Daylin, Inc.*, 596 F.2d 853 (9th Cir. 1979). *Daylin* further recognized that the right to reclaim can be defeated by a good faith purchaser for value.

■ Section 546(c) of the bankruptcy code became effective subsequent to the *Telemart* and *Daylin* decisions and was intended to recognize in part the validity of Section 2–702 of the Uniform Commercial Code. Section 546(c) clearly establishes that the rights of a trustee under the Bankruptcy Code are subject to a creditor's statutory right to reclaim. *See*, Code § 546

"(c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common–law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—

(A) grants the claim of such a seller priority as an administrative expense; or

(B) secures such claim by a lien."

The section permits the Court to deny reclamation and to grant in lieu thereof a priority as an administrative expense or to secure the demand by a lien on the debtor's assets. The purpose of Section 546(c)(2) is to balance the needs of a debtor seeking to reorganize against creditors with reclamation rights and to give such creditors protection in the event reclamation is denied. In the present case, the debtor–in–possession has disposed of or converted the goods subject to reclamation. Therefore, the powers of the Court are limited to the entry of a monetary judgment, the granting of a lien on the debtor's assets, or the granting of an administrative priority.

■ The Spokane Bank for Cooperatives contends that its security interest in all the debtor's assets, with its after–acquired property provision (which includes the goods delivered by defendants) cuts off any right to reclaim. On the other hand, the reclaimants assert that they are innocent parties who were not involved in the financing between the Bank and the debtor, that the debtor defrauded them, that the debtor should not be permitted to finance its Chapter 11 at their expense, that the debtor's financial situation is such that any administrative priority could turn out to be worthless, and that to deny them immediate payment or a first lien on the debtor's assets would be grossly unfair.

As a matter of equity, the arguments of the reclaimants are well taken and compelling. However, equitable considerations do not prevail in this instance. The legislative history of Section 546(c) states that, "the right [to reclaim] is subject to any superior rights of other creditors".

This rather general statement has been specifically applied in several cases factually similar to the one at issue. In *Stowers v. Mahon*, 526 F.2d 1238 (5th Cir. 1976); cert. den. 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976), the court considered reclamation claims by unpaid cash sellers of cattle in bankruptcy proceedings. In a lengthy and complex Circuit Court panel dissent, adopted by the Fifth Circuit, the court concluded that the claims of these sellers were subordinate to those of the debtor's secured lender (who had an after–acquired property clause). The court looked to Uniform Commercial Code Sections 2–403 and 2–507 as well as 2–702 to reach its decision that:

"... under this provision [§ 2–403] the rights of an aggrieved cash seller are subordinated to those of the buyer's good–faith purchasers, including Article Nine lenders ..."

526 F.2d at 1244.

The same decision was reached in a Ninth Circuit opinion citing *Stowers, Los Angeles Paper Bag Co. v. James Talcott, Inc.*, 604 F.2d 38 (9th Cir. 1979).

The same conclusion has also been reached in cases involving credit sellers. In *In re Bowman*, 25 UCC Rept.Srv. 738 (U.S. D.C., N.D.Ga.1978), the court again held that the debtor, even though a defaulting buyer, could pass title to a good faith purchaser, UCC § 403. Moreover, under UCC § 1–201(32) a secured creditor is a good faith purchaser and should therefore prevail over the reclaimants. *See also, Kennett– Murray & Co. v. Pawnee National Bank*, 598 P.2d 274 (Okla.1979).

I therefore find and conclude that these cases are in point and controlling.

Counsel for defendant, Shaffer–Haggart, Inc., have cited *In re American Food Purveyors, Inc.*, 17 UCC Rept.Srv. 436 (U.S. D.C., N.D.Ga.1974) as a case holding for the reclaimants. However, in that opinion the court felt that it had equitable reasons for concluding that the secured lender was not a good faith purchaser. Moreover, *American Food* is the only opinion cited for this proposition and therefore I conclude that it is contrary to the great weight of authority and should not be followed.

Based on the authorities cited, I conclude that the rights of reclamation are subordinate to the security interests of the Bank. Therefore, the demands for reclamation must be denied.

If reclamation is denied to sellers with such a right, Section 546(c)(2) requires that they be granted either a lien or an administrative priority. Some of the reclaiming creditors have pointed out the questionable value of the administrative priority in view of the debtor's present financial situation. The creditors then argue that their interests are entitled to adequate protection, and that the only such protection available is a first lien on the debtor's assets.

As the reclaimant's rights are subordinate to the Bank's security interest, they cannot be granted a first lien. In addition, the "adequate protection" concepts of the Bankruptcy Code appear to be restricted to matters arising under Sections 363 and 364. However, there is nothing which precludes granting the reclaimants' lines on all of the debtor's assets which liens would be subordinate to that of the Bank. Such liens would secure the rights of these creditors as much as is possible under the circumstances, would give them a priority over administrative claims, and would naturally bear interest at the statutory rate.

In passing, it should be noted that during the four months this action has been pending, none of the parties have seriously challenged the Bank's secured position. No one has insisted that the secured interest be proven, nor has anyone even bothered to look at the relevant documents. Therefore, the Court has assumed for the purpose of this motion that the Bank has a valid security interest in the debtor's assets. If it does not, the reclaimants are entitled to the return of their goods. If the goods are not returnable, appropriate judgments should be entered.

## CONCLUSION

All claims for reclamation will be denied. All parties who have valid claims for reclamation will be granted a lien on all of the debtor's assets in such amounts as their claims are proven. Such liens will be subordinate to the lien and/or security interest of the Spokane Bank for Cooperatives.

Insofar as the relief sought is inconsistent with the foregoing, the motion and cross motions for summary judgment will be denied.

This opinion will serve as the Court's Findings of Fact and Conclusions of Law on the motion.

## ON MOTION FOR RECONSIDERATION

Following the entry of the Court's opinion, the debtor moved for reconsideration, contending that a lien on all of its assets would unduly restrict its business. The debtor also argued that there is nothing in the Code, either in Section 546(c) or otherwise, which would warrant the granting of

interest on reclamation claims for which the Court had granted an administrative priority or a lien in lieu of reclamation. The debtor suggested a more appropriate solution would be to give the reclaimants a "senior administrative priority", without interest, which would be subordinate only to the security interest of the Spokane Bank for Cooperatives. Alternatively, the debtor suggested that the reclaimants could be given a non interest bearing lien on a specific parcel of realty.

In response, the reclaimants assert that the debtor is precluded from protesting the granting of interest because it acted improperly in deliberately converting the goods despite the demands for reclamation and before the legal issues presented could be resolved.

## DISCUSSION

First, I adhere to my conclusion that as a matter of law, the rights of the reclaimants are subordinate to the security interest of the Spokane Bank for Cooperatives. Accordingly, as the debtor could not legally return the goods to the reclaimants, I fail to see how the debtor's treatment of the goods effects the outcome of this case.

Second, the Court recognizes that the reclaimants are to a great extent innocent parties who have lost a valuable right as the result of the legal subordination of their claim to that of the Bank. Under such circumstances, I feel that the rights of the reclaimants should be protected to the greatest extent possible. I initially felt that the best way to provide such protection would be through a lien on all of the debtor's assets. However, it was never the Court's intention to encumber the debtor's operation in the ordinary course of its business.

■ Third, the Court finds the debtor's suggestion of providing a senior or super administrative priority interesting. Section 507(b) of the Code provides for a senior priority claim when supposedly adequate protection proves inadequate; and Section 364(c) authorizes a senior administrative priority when the trustee cannot obtain unsecured credit as an administrative expense. However, counsel have not cited, nor has the Court found, any other provision of the Code which gives the Court authority to create a super priority by exercising its equitable powers. I feel that it would be totally improper for this Court to create by judicial decision a category of administrative expense which Congress chose not to include in the Code.

Further, the concept of a lien, subordinate to that of the Bank, on one or all of the debtor's real estate holdings leaves much to be desired. All of the parties acknowledged that such a lien, even all of the debtor's extensive realty, might turn out to be worthless.

■ Fifth, as the parties suggested at the conclusion of argument, the most appropriate ruling would be to grant the reclaimants an administrative priority which would be secured by a lien on all of the debtor's realty. I concur.

■ Sixth, Section 546(c) does not mention interest. Section 726(a)(5) provides for the payment of interest on claims in the rare case of a solvent estate. Section 502 provides for objections to claims for unmatured interest. Otherwise, the Code is silent on this subject. As indicated above, this Court is not justified in creating a right under the Code which Congress in its infinite wisdom or by oversight did not provide.

Further, insofar as the reclaimant's position can be analogized to that of parties whose right to interest is dealt with in the Code, they are similar to unsecured creditors. The accrual of interest on unsecured claims is terminated as of the date of filing; and ordinarily such claimants are not entitled to interest unless such a provision is included in a plan of reorganization or unless there is a surplus in the estate. The fact that these reclaimants had rights of reclamation which have been subordinated to the rights of a prior secured creditor does not change their status. Similarly, the status of the reclaimants is not altered whether their claims simply arose in the ordinary course of the debtor's business or whether

they arose from some fraud, deception or conversion by the debtor. Interest is something that a creditor claimant is or is not entitled to as a matter of law and is not to be used or granted as a means of punishment.

Finally, the argument that it is unfair to permit the debtor to use the goods or funds of the reclaimants for its current operation or to finance its plan of reorganization does not impress me nor change my conclusion that an award of interest would be improper. The same argument could be made as to almost any creditor involved in a Chapter 11 proceeding, regardless of the origins of the claim.

Accordingly, I have concluded that the reclaimants are not entitled to interest.

### CONCLUSION

The motion for reconsideration is granted in the respects set forth above. The judgment of the Court will be as follows:

1. All claims for reclamation will be denied.

2. All parties who have valid claims for reclamation will be granted an administrative expense secured by a lien on all of the debtor's real property assets.

3. The lien shall be subordinate to the lien and/or security interest of the Spokane Bank for Cooperatives.

4. The administrative expense and lien granted will not bear interest.