**In the Matter of BOSLER SUPPLY GROUP, et al., Debtor.**

**AMERICAN SAW & MFG. COMPANY, Plaintiff,**

v.

**BOSLER SUPPLY GROUP, et al., Defendant.**

**No. 86 C 9738.**

United States District Court, N.D. Illinois, E.D.

May 14, 1987.

George W. Keeley, Halfpenny, Hahn & Roche, Chicago, Ill., for plaintiff.

Bruce Dopke, Schwartz, Cooper, Kolb and Gaynor, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

American Saw & Mfg. Company ("American Saw") appeals the final order of the bankruptcy court, 67 B.R. 71, denying American Saw's motion for summary judgment and granting the cross-motion of the debtor, Bosler Supply Group, *et al.* ("Bosler") for summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 158. For the reasons set forth below, the judgment of the bankruptcy court is reversed and the case is remanded to the bankruptcy court for the purpose of granting American Saw appropriate relief pursuant to 11 U.S.C. § 546(c)(2).

### Facts

The facts are undisputed, and we adopt, virtually verbatim, the bankruptcy court's rendition of those facts. On February 10, 1986, Bosler filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Bankruptcy Code"). Before the filing of Bosler's petition, but at a time at which Bosler was insolvent, American Saw sold certain goods to Bosler on open account in the ordinary course of business. As a result of these sales, Bosler became indebted to American Saw for the amount of $33,-550.33.

Prior to these sales, Bosler had entered into a certain accounts receivable financing arrangement with Manufacturers Hanover Commercial Corporation ("MHCC"). As part of this arrangement, Bosler granted MHCC liens on and security interests in its collateral, including, among other things, all of Bosler's inventory. MHCC properly perfected its security interest. At the time of the filing of the bankruptcy petition, Bosler was indebted to MHCC in the amount of approximately $4,645,000.00, plus interest and other fees and costs under the terms of the financing agreement.

Bosler did not make any payment of the $33,550.33, and on February 12, 1986, within ten days of Bosler's receipt of the goods, American Saw made a written demand for immediate reclamation of the goods. At the time Bosler received this notice, it had $31,787.62 of the goods in its possession; however, between February 13, 1986 and April 29, 1986, Bosler sold $26,960.70 [1] of the goods to third parties, and on April 29, 1986, the remaining $4,826.92 of the goods were sold as part of a sale of all of Bosler's assets to Consolidated Stores International, Inc. and Engman-Taylor Co., Inc. The proceeds of this sale were paid to MHCC in full payment of Bosler's indebtedness. The parties agreed that the goods claimed by American Saw would be sold free and clear of any interest of American Saw and that any right of American Saw to reclaim its goods would attach to the proceeds of the sale. Bosler has not returned either the goods or the proceeds of sale to American Saw.

---

1. Both parties and the bankruptcy court indicate that this figure is $26,*690*.70; however, our addition leads us to conclude that the correct figure is actually $26,*960*.70.

On May 15, 1986, American Saw filed an adversary complaint in the bankruptcy court seeking an order directing Bosler to return the goods or the proceeds.[2] On October 31, 1986, the bankruptcy court entered an order denying American Saw's motion for summary judgment and granting Bosler's cross-motion for summary judgment. The court held that although American Saw had made a timely written demand for reclamation of goods received by Bosler while Bosler was insolvent, American Saw had no right to reclaim the goods because MHCC had a superior lien, and that lien extinguished American Saw's right of reclamation. Finding that American Saw had no right to reclaim its goods, the bankruptcy court refused to grant American Saw an administrative expense priority or a lien on Bosler's assets. In this appeal, American Saw contends that the bankruptcy court's interpretation and application of the law are erroneous.

### Discussion

In seeking reclamation of its goods, American Saw relies on § 2–702 of the Uniform Commercial Code, as adopted by Illinois, Ill.Rev.Stat. ch. 26, ¶ 2–702. That section provides, in pertinent part:

> (2) where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt....

> (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article.

The Bankruptcy Code expressly recognizes a seller's right to reclaim under § 2–702, adding only a requirement that the demand for reclamation be in writing. The applicable provision is § 546(c), which provides:

> Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

> (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

> (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

> (A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title;[3] or

> (B) secures such claim by a lien.

In addition to these prerequisites, various courts have also required that the goods be in the debtor's possession at the time of the demand. *See, e.g., Dukseung of America, Inc. v. New York Wholesale Distributors Corp. (In re New York Wholesale Distributors Corp.)*, 58 B.R. 497, 500 (Bankr.S.D.N.Y.1986); *In re Flagstaff Foodservice Corp.*, 56 B.R. 910, 914 n. 9 (Bankr.S.D.N.Y.1986); *Ecolotec, Inc. v. Deephouse Equipment Co. (In re Deephouse Equipment Co.)*, 22 B.R. 255, 258 (Bankr.D.Conn.1982) (no right to proceeds).

In the case before us, there is no dispute that Bosler received the goods from American Saw while insolvent, that American Saw demanded reclamation of the goods within 10 days of Bosler's receipt of the goods, and that the reclamation demand was in writing. Thus, American Saw has fulfilled all of the statutory requirements

---

**2.** At the time American Saw filed its complaint, MHCC claimed it had an interest in the goods that was superior to American Saw's. American Saw's complaint thus also sought an order from the bankruptcy court declaring that its interest in the goods was superior to MHCC's. By agreed order entered by the court on June 30, 1986, however, MHCC waived any interest or claim in the goods which were the subject of American Saw's reclamation claim, American Saw waived any claims it may have had against MHCC arising out of or related to American Saw's claim to the goods, and MHCC was dismissed from the complaint.

**3.** Section 503 governs the allowance of administrative expense claims.

to entitle it to a right of reclamation. Furthermore, at the time of the demand, Bosler had in its possession $31,787.62 of the goods, and it is only to this extent that American Saw seeks an administrative expense priority.

Although American Saw appears to meet all of the rather stringent requirements for reclamation, the bankruptcy court nonetheless found that American Saw had no such right to reclaim its goods from Bosler. The bankruptcy court took the position that "[t]here is but one moment of truth under Bankruptcy Code § 546(c)(2)(a) [sic]: that moment of truth is that when American Saw attempts to assert its right to reclaim." *American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler Supply Group)*, 67 B.R. 71, 74 (Bankr.N.D.Ill. 1986). The court noted that at the operative moment, MHCC was a secured creditor of Bosler, holding a lien superior to any rights held by American Saw. The court held that the existence of that lien extinguished American Saw's right of reclamation, and further held that the right was not reestablished when MHCC was paid in full.

We disagree with the decision of the bankruptcy court. In holding that the existence of a secured creditor extinguishes a seller's right to reclaim goods, the bankruptcy court has essentially placed an additional prerequisite on the right of reclamation; i.e., there must be no senior lienholders. We conclude that the drafters of neither the Uniform Commercial Code nor the Bankruptcy Code intended such a result. Subsection 2–702(3) expressly states that "the seller's right to reclaim under subsection (2) *is subject to* the rights of a buyer in ordinary course or other good faith purchaser under this Article." (emphasis added). Even assuming that a secured credi-

tor falls within one of these categories,[4] the language clearly indicates that the reclaiming sellers' right is *subject to*, not extinguished by, the existence of a secured creditor. Thus, the reclaiming seller may have to wait in line behind the secured creditor, but we read nothing in the statute that indicates the reclaiming seller loses his state-created right entirely simply because an entity holds a right senior to his.

The case law addressing this issue is consistent with our reading of the statutes. In *Harris Trust and Savings Bank v. Wathen's Elevators, Inc. (In re Wathen's Elevators, Inc.)*, 32 B.R. 912 (Bankr.W.D. Ky.1983), the court held first that the sellers' rights of reclamation were subject to that of Harris, a secured creditor, and then addressed the sellers' rights, stating:

> However, to say that reclamation is "subject to" superior claims is neither to deny the validity of the sellers' rights nor to bar their claims. Rather the effect of this language is to eliminate their first position and relegate the sellers to some less commanding station.
>
> Providently, the Bankruptcy Code does not leave unattended those eight parties whose reclamation rights were properly preserved. Section 546(c) does offer some limited protection to these claimants. When reclamation is denied to a seller with an otherwise valid right—where, for example, as here, the goods were subject to a senior secured claim—the court may do so only by granting that seller an alternative form of relief. The statute contemplates the replacement of reclamation by a lien equal in value and effectiveness to the right of reclamation at the time it was asserted.

32 B.R. at 923. Similarly, in *Western Farmers Association v. Ciba Geigy (In re Western Farmers Association)*, 6 B.R. 432

---

4. Several courts have addressed this question of statutory construction. *See, e.g., Stowers v. Mahon (In re Samuels & Co.)*, 526 F.2d 1238 (5th Cir.), *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *Harris Trust and Savings Bank v. Wathen's Elevators, Inc. (In re Wathen's Elevators, Inc.)*, 32 B.R. 912, 919 (Bankr.W.D. Ky.1983); *Lavonia Manufacturing Co. v. Emery Corp.*, 52 B.R. 944 (E.D.Pa.1985). *Action Industries, Inc. v. Dixie Enterprises, Inc. (In re Dixie*

*Enterprises, Inc.)*, 22 B.R. 855, 859 (Bankr.S.D. Ohio 1982). We need not decide this issue since this is not an action involving the competing interests of the reclaiming seller and the secured creditor, but is instead an action involving the propriety of granting the reclaiming seller one of the alternative remedies available under § 546(c)(2). *See Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreading Co.)*, 795 F.2d 676, 680 (8th Cir.1986).

(Bankr.W.D.Wash.1980), the court characterized the issue before it as "whether the defendants' attempt to reclaim can prevail in the face of the Spokane Bank's asserted security interest in the delivered goods." *Id.* at 434. The court held that the rights of the reclaiming sellers were subordinate to the security interests of the bank; however, the court did not conclude from this that the seller had no right to reclaim, but rather that reclamation had to be denied and an alternative remedy provided. *See id.* at 436. *See also 4 Collier On Bankruptcy* ¶ 546.04 (15th ed. 1986).

The bankruptcy court appears to take the position that if the right to reclaim is frustrated at the time reclamation is demanded, then the right ceases to exist. The cases we have cited above, however, refute such an interpretation, *see Harris Trust,* 32 B.R. at 923; *Western Farmers,* 6 B.R. at 436, as does other case law on the issue. For example, in *Champion International Corp. v. Davidson Lumber Co. (In re Davidson Lumber Co.),* 22 B.R. 775 (Bankr.S.D.Fla.1982), the debtor moved to dismiss a reclaiming seller's complaint on the ground that the goods in question were no longer in the debtor's possession, as the debtor had sold the goods after notice of the demand for reclamation was received but before the date of the filing of the chapter 11 petition. The issue, according to the court, was "whether the reclamation rights of the seller are cut off if the debtor has sold the goods in the ordinary course of business to bona fide purchasers before the chapter 11 petition is filed." *Id.* at 776. The court held that the reclaiming seller's rights were not cut off and that the seller was entitled to an administrative claim priority in lieu of the goods. *Id. See also Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreating Co.),* 795 F.2d 676, 680 (8th Cir.1986) (where reclamation made impossible because of action of the bankrupt after receipt of reclamation demand, court should make judicial determination to deny reclamation and grant statutory alternative).

*Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.),* 744 F.2d 686 (9th Cir.1984), upon which the bankruptcy court relies, is not inconsistent with our analysis. In that case, the debtor, Coast, ordered several carloads of grain from Collingwood to be shipped directly to stockyard clients of Coast. Collingwood shipped the grain, but Coast's drafts were dishonored and Coast filed for bankruptcy. The court held that the stockyards' purchase of the grain precluded Collingwood from exercising any right it may have had under § 2-702 to reclaim the grain because the stockyards were good faith purchasers for value under the Uniform Commercial Code, and the delivery directly to the third party stockyards as called for by the contract was sufficient to cause their rights as good faith purchasers to attach under § 2-702(3), despite Coast's default. Thus, it is clear that the basis of the court's ruling in *Collingwood Grain* is that the seller had no valid right of reclamation because Coast had, by ordering that delivery be made directly to the stockyards, in essence "resold" the goods *prior* to receiving notice of Collingwood's reclamation demand. That case is therefore materially different from ours, in which American Saw *does have* a valid (though subordinated) right to reclaim. The *Collingwood Grain* court itself acknowledged this distinction. *See id.* at 692 (distinguishing case before it from *Western Farmers*).

■ In short, we conclude that because American Saw met all the requirements entitling it to a right of reclamation, American Saw *has* such a right of reclamation against Bosler. That right is not cut off by MHCC's existence as a secured creditor at the time of the reclamation demand. It is true that the *ability to exercise* that right is cut off because of MHCC's priority, but it does not follow from this that the right itself is extinguished. Thus, we conclude that the bankruptcy court erred in holding that American Saw had no right of reclamation and in granting Bosler's motion for summary judgment.

■ With respect to the appropriate remedy under these circumstances, § 546(c) provides a clear directive: the court may deny reclamation to a seller who has a

right of reclamation and who has made an appropriate demand, but *only* if the court grants the claim administrative expense priority or secures the claim by a lien. Thus, American Saw is entitled to a priority to the extent of $31,787.62, the amount of the goods remaining in Bosler's possession at the time it received notice of American Saw's reclamation demand. *See, e.g., Harris Trust,* 32 B.R. at 923; *Champion International Corp.,* 22 B.R. at 776; *McCain Foods, Inc. v. Flagstaff Foodservice Company New England, Inc. (In re Flagstaff Foodservice Corp.),* 14 B.R. 462, 469 (Bankr.S.D.N.Y.1981). *See also 4 Collier on Bankruptcy* ¶ 546.04, at 546–17—546–18 (15th ed. 1986).

### Conclusion

For all the foregoing reasons, the judgment of the bankruptcy court is reversed, and this case is remanded to the bankruptcy court for entry of an order consistent with this opinion granting American Saw appropriate relief.