**In re VICTORY MARKETS INC., Debtor.**

**In re DUNCO REALTY & EQUIPMENT CORP., Debtor.**

**In re VM CUSTOM FIXTURES, INC., Debtor.**

**In re FOOD KING, INC., Debtor.**

**In re NORWICH RECYCLING CORP., Debtor.**

**In re GEDDES ST. PLAZA ASSOC., INC., Debtor.**

**Bankruptcy Nos. 95–63366 to 95–63371.**

United States Bankruptcy Court, N.D. New York.

April 30, 1997.

Menter, Rudin & Trivelpiece, P.C., Syracuse, NY (Jeffrey Dove, of counsel), for Debtor.

Cooper, Erving, Savage, Nolan & Heller, LLP, Albany, NY (Craig H. Norman, of counsel), for Creditor.

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This contested matter comes before the Court by way of a cross-motion filed by creditor Imperial Distributors, Inc. ("Imperial"), seeking allowance and payment of an administrative expense claim against the debtor, Victory Markets, Inc. ("Debtor"), based upon a sale of goods to Debtor prior to bankruptcy.

The Court heard oral argument on the matter at a regular motion term in Syracuse, New York, on January 21, 1997. The Court reserved decision and the matter was submitted for decision on that date.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A), (B) and (K).

### FACTS AND ARGUMENTS

Debtor and five of its wholly-owned subsidiaries filed voluntary petitions pursuant to chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") on September 20, 1995. At the time of filing, Debtor operated approximately fifty-seven grocery stores throughout the Northern and Central New York regions under the trade name of "Great American Food Stores." After filing, Debtor continued operating as a debtor-in-possession pursuant to Code §§ 1107 and 1108. By Order dated September 27, 1996, the Court confirmed Debtor's liquidating plan of reorganization.

The instant dispute arises from a claim by Imperial that it sold and delivered certain

goods and merchandise ("Goods") in the ordinary course of business to Debtor prior to bankruptcy, for which Debtor agreed to pay the sum of $101,985.45.[1] After learning of Debtor's bankruptcy, Imperial made a demand in writing to Debtor on September 20, 1995 asserting a right of reclamation ("Notice") with respect to the Goods, which Imperial identified by invoice number and date. *See* Affidavit of Herbert Daitch in Support of Reclamation Claim of Imperial, dated January 14, 1997, at 2; Debtor's Memorandum of Law in Opposition, dated November 27, 1996, at 2. Imperial claims that the Goods were received by Debtor on credit and while Debtor was insolvent, and that the reclamation demand was made before ten days after the receipt of the Goods by Debtor. Accordingly, Imperial asserts that based upon section 2–702 of the New York Uniform Commercial Code ("NYUCC") and Code § 546(c) it is entitled to an administrative priority claim in the amount of $101,985.45.

One issue between the parties is the question of what portion of the Goods which are the subject of Imperial's reclamation demand still remained in Debtor's possession on September 20, 1995. Imperial argues that such information is within the knowledge of the Debtor, and that Imperial should not bear the burden of proving this fact. Furthermore, Imperial believes that based on standard industry rates of turnover of inventory, all of the Goods sold were still in the Debtor's possession on September 20, 1995, but that at this point those Goods have been consumed and are no longer in Debtor's possession.

Debtor contends that Imperial is entitled only to a claim for those Goods which were still in Debtor's possession at the time it received the Notice. Debtor disputes the amount of the claim, arguing that Imperial will not be able to meet its burden of proving the amount of Goods that still remained in Debtor's possession at the time the Notice was received. According to Debtor, however, the issue of what Goods remained at the time of the Notice is ancillary to the primary issue, which is the argument that a valid reclamation right did not exist under state law and as a result Imperial's claim under Code § 546 must fail.

The basis of Debtor's argument is that Code § 546 does not create a distinct right of reclamation in bankruptcy, but rather merely provides an avenue to enforce such a right under bankruptcy law if the right exists under other applicable law. Debtor states that although a seller has a statutory right of reclamation pursuant to NYUCC § 2–702, that right is subject to the rights of a "good faith purchaser" pursuant to NYUCC § 2–702(3). Debtor contends that two entities, C & S Wholesale Grocers, Inc. and State Bank of New South Wales, Ltd., are the holders of perfected security interests in the Goods by virtue of having filed UCC–1 financing statements which cover Debtor's inventory, and that these entities are deemed good faith purchasers whose interests are superior to Imperial's right to reclamation. As a result, Imperial is unable to exercise its right of reclamation and its claim is extinguished, thereby precluding Imperial from an administrative priority claim or a substitute lien under Code § 546(c)(2)(A) or (B). Debtor asserts that Imperial is left only with a non-priority unsecured claim.

## DISCUSSION

■ This Court has previously addressed the issue of whether a secured creditor with a floating lien takes precedence over a seller's right to reclaim under Code § 546(c)[2].

---

**1.** According to Imperial, Debtor would generally transmit orders for certain goods which would then be prepared for pick-up on store specific shipping pallets. When the orders were ready for shipping, Debtor's trucker would come to Imperial's warehouse where he received the goods, bills of lading and the contemporaneously generated invoices of the goods sold. Imperial states that orders were generally picked up on the invoice date, and on rare occasions they were picked up the following morning.

**2.** Code § 546(c) was amended in 1994 to read as follows:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

*See In re Roberts Hardware Co.*, 103 B.R. 396 (Bankr.N.D.N.Y.1988). In that Decision, the Court observed that Code § 546(c) was enacted to dispel the confusion surrounding the application of § 2–702 of the Uniform Commercial Code in a bankruptcy context, *see id.* at 398, in that the intended purpose of Code § 546(c) was to preserve reclamation rights that exist outside of bankruptcy. *See* H.R. No. 595, 95th Cong., 1st Sess. 371–72 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6327–28. Importantly, the section does not create an independent right of reclamation, but rather recognizes such a right if the seller has a right to reclaim under applicable non-bankruptcy law. *See Toshiba America, Inc. v. Video King of Illinois, Inc. (In re Video King of Illinois, Inc.)*, 100 B.R. 1008, 1013 (Bankr.N.D.Ill.1989).

■■■■ Code § 546(c) preserves the right of a creditor/seller to reclaim goods sold to an insolvent debtor if the seller can establish: (1) that it has a statutory or common-law right to reclaim the goods; (2) that the goods were sold in the ordinary course of the seller's business; (3) that the debtor was insolvent at the time the goods were received; and (4) that it made a written demand for reclamation within the statutory time limit after the debtor received the goods. *See* 11 U.S.C. § 546(c); *In re Child World, Inc.*, 145 B.R. 5, 7 (Bankr.S.D.N.Y.1992), *aff'd*, 147 B.R. 323 (S.D.N.Y.1992), *aff'd*, 992 F.2d 321 (2d Cir.1993); *In re Leeds Bldg. Prods., Inc.*, 141 B.R. 265, 267 (Bankr.N.D.Ga.1992). Code § 546(c) is the exclusive remedy of a creditor who seeks to reclaim goods sold to an insolvent debtor. *See Flav–O–Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.)*, 846 F.2d 1343, 1346 (11th Cir.1988); *In re Mayer Pollock Steel Corp.*, 157 B.R. 952, 959 (Bankr.E.D.Pa.1993); *In re Rea Keech Buick, Inc.*, 139 B.R. 625, 628

(Bankr.D.Md.1992); *Leeds Bldg. Prods.*, 141 B.R. at 267.

■■■■ Initially addressing the latter three elements of Code § 546(c), there is no dispute that Imperial sold the Goods to Debtor in the ordinary course of its business. Imperial is in the business of selling health and beauty aids and Debtor regularly purchased such goods from Imperial for purposes of resale. In addition, Debtor concedes that Imperial made its reclamation demand within the statutory period and that it received the Notice on the petition date. Imperial has not submitted evidence of Debtor's insolvency on the dates the Goods were delivered, however, nor has the Debtor conceded this issue. It is Imperial's burden to establish this fact, along with every other element of Code § 546(c), by a preponderance of the evidence. *See Video King*, 100 B.R. at 1015; *see also Monfort, Inc. v. Kunkel (In re Morken)*, 182 B.R. 1007, 1021 (Bankr.D.Minn.1995) (stating that presumption of insolvency is for preference purposes only under Code § 547(f)). Imperial also bears the burden of demonstrating that Debtor had possession of the Goods at the time the Notice was received. *See Rawson Food Serv.* 846 F.2d at 1347; *In re New York Wholesale Distribs. Corp.*, 58 B.R. 497, 500 (Bankr.S.D.N.Y.1986); *Allstate Fabricators, Inc. v. Flagstaff Foodservice Corp. (In re Flagstaff Foodservice Corp.)*, 56 B.R. 899, 908 n. 7 (Bankr.S.D.N.Y.1986).

■■■■ Returning to the first requirement of Code § 546(c) of a statutory or common-law right to reclaim, a seller in New York has a statutory right of reclamation where the buyer has received goods on credit while insolvent and where the seller has demanded return of the goods within the statutory time limit after receipt by the buyer. *See* NYUCC § 2–702; *Sandoz Pharmaceuticals*

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—
 (A) before 10 days after receipt of such goods by the debtor; or
 (B) if such 10–day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and
(2) the court may deny reclamation to a seller with such right of reclamation that has made such a demand only if the court—

 (A) grants the claim of such a seller a priority as a claim of a kind specified in section 503(b) of this title; or
 (B) secures such claim by a lien.
*See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 509, 108 Stat. 4106, 4124. The amendment does not substantively affect the issues presently before the Court.

*Corp. v. Blinn Wholesale Drug Co., Inc. (In re Blinn Wholesale Drug Co., Inc.),* 164 B.R. 440, 443 (Bankr.E.D.N.Y.1994). The right to reclaim is limited by NYUCC § 2–702(3), however, which makes the seller's right subject to the rights of a buyer in the ordinary course of business or other good faith purchaser. *See Blinn,* 164 B.R. at 443; *Child World,* 145 B.R. at 7. It is well-settled law that absent a showing of bad faith, a holder of a prior perfected, floating lien on inventory will be treated as a good faith purchaser with rights superior to those of a reclaiming seller. *See Stowers v. Mahon (In re Samuels & Co.),* 526 F.2d 1238, 1242–43 (5th Cir. 1976); *Isaly Klondike Co. v. Sunstate Dairy & Food Prods. Co. (In re Sunstate Dairy & Food Prods. Co.),* 145 B.R. 341, 344 (Bankr. M.D.Fla.1992); *Child World,* 145 B.R. at 7; *In re Diversified Food Serv. Distribs.,* 130 B.R. 427, 429 (Bankr.S.D.N.Y.1991).

In the case *sub judice,* Debtor asserts that C & S Wholesale Grocers, Inc. and State Bank of New South Wales, Ltd. had prior perfected floating liens on the Debtor's inventory on the date that Imperial asserted its right of reclamation. Imperial has not disputed this assertion, nor has it argued that either entity is not a good faith purchaser. Therefore, both C & S Wholesalers, Inc. and State Bank of New South Wales, Ltd. are deemed to have been good faith purchasers with rights superior to those of Imperial as a reclaiming seller as of September 20, 1995. *See, e.g., Sunstate Dairy & Food Prods.,* 145 B.R. at 344.

Since there are prior perfected security interests in the Goods that Imperial seeks to reclaim, Imperial's claim is necessarily subordinated, but is not automatically extinguished. Rather, Imperial's claim is relegated to "some less commanding station." *In re Wathen's Elevators, Inc.,* 32 B.R. 912, 923 (Bankr.W.D.Ky.1983); *see Leeds Bldg. Prods.,* 141 B.R. at 268; *Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.),* 62 B.R. 315, 322 (Bankr.E.D.N.C.1986). What this "station" is, however, has been the subject of divergent judicial opinions. Some courts have held that where reclamation is denied, the seller is entitled to an administrative priority claim or a lien in the full amount of the reclamation claim. *See, e.g., American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler Supply Group),* 74 B.R. 250, 254–55 (N.D.Ill.1987); *Sunstate Dairy & Food Prods.,* 145 B.R. at 345–6; *Diversified Food Serv. Distribs.,* 130 B.R. at 430.[3] Other courts have held that any right of a seller to reclamation is extinguished if there is a prior secured creditor, thereby precluding any remedy of an administrative priority claim or lien under Code § 546(c)(2)(A). *See, e.g., In re Coast Trading Co.,* 744 F.2d 686 (9th Cir.1984); *In re Shattuc Cable Corp.,* 138 B.R. 557, 562 (Bankr.N.D.Ill.1992), *overruled by In re Reliable Drug Stores, Inc.,* 70 F.3d 948 (7th Cir.1995). Yet another interpretation requires a seller to first establish its right of reclamation and then requires that the seller establish the value of that right in order to determine the amount of the administrative claim or lien to which it is entitled under Code § 546(c). *See, e.g., Video King,* 100 B.R. at 1016.

 This Court finds, as it did in *Roberts Hardware,* that while the right of reclamation is subject to superior perfected claims of other creditors, this subordination does

---

**3.** This Court also previously allowed a seller who satisfied the prerequisites of Code § 546(c) an administrative priority claim in the full amount of its reclamation claim. *See Roberts Hardware,* 103 B.R. at 399. The Court found that a seller's right of reclamation was not extinguished or canceled merely because there was a superior valid security interest. Instead, the seller would be "relegat[ed] to some less commanding station." *Id.* at 398 (quoting *In re Wathen's Elevators, Inc.,* 32 B.R. 912, 923 (Bankr.W.D.Ky. 1983)).

In *Roberts,* however, the issue of whether the reclaiming seller's claim should receive administrative priority in its full amount was not fully presented to the Court. Indeed, the debtor's largest creditor argued that its prior perfected security interest canceled the seller's right to reclaim and left the seller with a priority expense claim. *See Roberts,* 103 B.R. at 397.

In contrast, the parties in the matter presently before the Court have raised the issue of whether Imperial should even be allowed an administrative priority claim. As detailed further herein, the Court finds that a seller with a valid right of reclamation is not automatically entitled to an administrative priority claim in the full amount of its claim if the seller's rights in the goods are subject to a superior perfected security interest.

not automatically result in the extinguishment of the seller's reclamation claim. *See Roberts Hardware*, 103 B.R. at 398. However, a reclaiming seller is also not automatically entitled to an administrative priority claim or substitute lien in the entire amount of its claim merely because the seller's right of reclamation is subject to a superior perfected claim. *See Leeds Bldg. Prods.*, 141 B.R. at 269; *FCX*, 62 B.R. at 322. Instead, the reclaiming seller retains a priority interest in any goods remaining and in any surplus proceeds remaining after the superior secured creditor's interests have been satisfied or released. *See Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.)*, 964 F.2d 842, 846 (8th Cir.1992). If the seller's right to reclaim is worthless because the superior secured creditor's claim exceeds the value of the goods, the seller's request to reclaim is not denied by the court but rather is of no value, and therefore the remedies of an administrative priority claim or lien under Code § 546(c)(2) are unavailable to the seller. *See Child World*, 145 B.R. at 8; *see also Pester*, 964 F.2d at 847 ("[T]he bankruptcy court does not 'deny reclamation' in recognizing that the reclamation right no longer has value; therefore, the alternative remedies of Code § 546(c)(2) do not come into play.").[4] For example, if the goods of the seller would be fully used to satisfy the lien of the superior lien creditor, the seller's right of reclamation would be rendered valueless and there would be no basis upon which to award an administrative claim or lien. *See Video King*, 100 B.R. at 1016–17. However, if the superior lien creditor's lien was avoidable for some reason, such as because of a defect in perfection, and the court decided to deny the seller's reclamation demand, the seller then would be entitled to an administrative claim or lien in the full amount of its claim. *See id.*

Code § 546(c) does not give a seller any greater rights than it has outside of bankruptcy; rights that have no value in the non-bankruptcy context will similarly have no value in the bankruptcy context. *See Leeds*, 141 B.R. at 269; *Video King*, 100 B.R. at 1017. Granting a seller an administrative priority claim in bankruptcy when the right to reclaim is entirely subordinated by the rights of a superior secured creditor would be to give the seller greater rights than possessed outside of bankruptcy, and this would clearly be contrary to the concept of equal treatment of creditors under the Code. *See Leeds*, 141 B.R. at 269; *Video King*, 100 B.R. at 1016. If the secured creditor's rights are superior to the seller's, the seller is left with a nonpriority unsecured claim as to the value of goods subject to the superior secured creditor's claim, and a right of reclamation as to the goods or value which are in excess of the creditor's claim. *See Video King*, 100 B.R. at 1016; *see also Pester*, 964 F.2d at 846 ("Therefore, after the secured creditors' superior interests have been satisfied or released, the reclaiming seller retains a priority interest in any remaining goods, and in any surplus proceeds from the secured creditors' foreclosure sale")[5]; *Leeds*, 141 B.R. at 270 (finding that seller may be entitled to administrative priority claim or lien under Code § 546(c)(2) if it can show the value of its right to reclaim outside of a bankruptcy context, but if value of inventory is insufficient to satisfy priority secured creditor's claim in full, seller has a valueless right outside of bankruptcy since all goods sold are subject to creditor's claim).

Since the bankruptcy court does not deny reclamation merely by observing that a reclamation right is valueless, a seller's remedies of an administrative priority claim or a lien

---

**4.** Although Imperial cites *Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreading Co.)*, 795 F.2d 676 (8th Cir.1986), in support of its claim that it is entitled to an administrative claim in spite of the prior perfected floating liens, that decision expressly avoided addressing the issue of conflicting interests of a secured creditor and a seller in the same goods. Therefore reliance on *Griffin Retreading* is inapposite.

**5.** Even if this Court were to agree with the analysis in *Pester* that consideration of the Debtor's

plan of reorganization (more than one and one-half years after the reclamation demand was made by Imperial) might lead to a finding that the undersecured priority secured creditors released their interests in the specific Goods sold to the Debtor, thus "reviving" the previously lifeless claim of Imperial, neither the facts nor the arguments presented in this case warrant a consideration of this possibility. *Pester*, 964 F.2d at 848–9.

under Code § 546(c)(2) are not available. *See Pester,* 964 F.2d at 847. It is only when there are goods or traceable proceeds from the goods in excess of the value of the priority secured creditor's claim that the remedies of Code § 546(c)(2) can be used to give the debtor needed flexibility in utilizing the goods. *Id.*[6] "But when the secured creditors have satisfied their claims *out of the goods to be reclaimed,* granting Code § 546(c)(2) relief would afford the reclamation seller something it does not have under the UCC—a priority interest in the buyer's assets other than the goods to be reclaimed." *Id.* (emphasis in original) (cite omitted).

■ Under the foregoing analysis, even if Imperial were able to show that the Debtor was insolvent at the time the Goods were delivered and that all of the Goods still remained in the Debtor's possession at the time of the reclamation demand, Imperial would still be required to show that its claim has value beyond the claims of the priority secured lienholders in order to be entitled to the relief it seeks. If Imperial is unable to meet these burdens, it is left with just what it would have had in the non-bankruptcy context, which is a general unsecured claim for the Goods sold to the Debtor.

Based upon the foregoing, it is

ORDERED that Imperial's claim for an administrative priority claim or lien in the amount of its reclamation claim pursuant to NYUCC § 2–702 and Code § 546(c) based upon a sale of Goods to Debtor prior to bankruptcy is hereby DENIED.

---

**6.** The above methodology for determining the value of a seller's reclamation claim is only slightly different from that utilized by Bankruptcy Judge Robert John Hall in *Sandoz Pharmaceuticals Corp. v. Blinn Wholesale Drug Co., Inc. (In re Blinn Wholesale Drug Co., Inc.),* 164 B.R. 440 (Bankr.E.D.N.Y.1994) under one solution proposed for dealing with a reclaiming seller whose rights are subordinate to a priority secured creditor. Rather than observing that a reclamation claim is valueless due to the existence of an undersecured priority lien creditor, Judge Hall proposed that the court could *deny* reclamation of the fully or partially encumbered goods and then require the seller to prove the value, if any, of its lost right. *See Blinn,* 164 B.R. at 448. If the seller is unable to establish that its right is other than valueless, reclamation can be denied and the seller can be allowed a priority claim of little or no value. *Id.* If the seller is successful in demonstrating that its claim does have value, the seller should be granted a secured or administrative claim of commensurate value with the remainder being an unsecured non-priority claim. *Id.*